**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| | * |
| **v.** | *        **Case No. ELH-22-0034** |
| | * |
| **TERRENCE HILLMAN** | * |
| | * |

---

## SENTENCING MEMORANDUM

Terrence Hillman, the Defendant, by and through and Laura Ginsburg Abelson, Assistant Federal Public Defender, respectfully files this memorandum in advance of the March 22, 2023, sentencing in this case. At the hearing, the Court should impose a sentence of 21 months of incarceration, with two years of supervised release to follow, as recommended by Probation.

A twenty-one month sentence is sufficient, but not greater than necessary to achieve the sentencing aims of 18 U.S.C. § 3553(a). Mr. Hillman was shot by police in the course of his arrest. The substantial lasting injuries he suffered serve as a significant deterrent. In addition, a 21-month sentence is by far the longest sentence he has ever served. Finally, a 21-month sentence is within the advisory guideline range, because Mr. Hillman's prior conviction for Maryland robbery is not a "crime of violence."

## ARGUMENT

I. **The nature and circumstances of this offense demonstrate that Mr. Hillman does not pose a substantial threat to public safety.**

On the night of Mr. Hillman's arrest, he possessed an inoperable firearm. Discovery

reflects that officers responded to a report of shots fired on the 400 block of East Baltimore Street in Baltimore, otherwise known as "the Block." When they arrived, they found a group of both male and female citizens gathered and arguing on the street. Mr. Hillman was present during the altercation, but was not involved. When police came upon the group, Mr. Hillman began to run away, westward on East Baltimore Street.

Mr. Hillman had the inoperable gun in his hand as he ran away from both the group that was fighting and the police. As he fled, a police officer shot Mr. Hillman four times, in the shoulder, pelvis, arm, and knee. Mr. Hillman fell to the ground, and police recovered the firearm.

There is no dispute that Mr. Hillman did not discharge the firearm he possessed and therefore was not the person who fired the shots that caused officers to respond to the scene that evening. Upon recovering the firearm, law enforcement determined that it was not operable as it existed at the time that Mr. Hillman possessed it. The Forensic Science and Evidence Services Division of the Baltimore Police department "tightened down" the "hammer spring tension screw," which then rendered the firearm operable. *See* Firearms Report, Ex. 1. In addition, the firearm, a revolver, was loaded with two bullets, and had no spent shell casings, which demonstrated that it had not been fired recently.

Mr. Hillman did not fire or attempt to fire the gun he possessed at any time, even when he was in a situation where others, including the police, were shooting around him. No doubt, it was a dangerous choice to go out for the evening even armed with an inoperable firearm, but Mr. Hillman has already faced very serious consequences for those actions. Incarceration for more than twenty-one months is not necessary to address the nature and circumstances of this offense.

## II. The significant and lasting injuries Mr. Hillman suffered when being shot by police during the course of his arrest have provided an immeasurable deterrent to future offenses.

For Mr. Hillman, the lesson learned from his arrest is very stark: had he not had the gun in his hand when police arrived, he would not have been shot by police and would not have suffered dire physical injuries. His time incarcerated has only amplified this lesson. As he has been shuttled around multiple detention facilities, he has struggled to access consistent medical care and therefore suffers near-constant pain. The difficulty of his daily life and the pain he experiences from this confluence of factors is a greater deterrent to future criminal conduct than any additional prison time would be.

Mr. Hillman was shot by police four times because he possessed an inoperable gun while running away from a fight. He was taken to Shock Trauma and treated for multiple injuries. Medical records reflect that Mr. Hillman's pelvis was fractured and that he had a substantial injury to his colon.[1]

IMPRESSION:

1. No acute injury involving the head, neck/cervical spine, chest, or abdomen.

2. Small ballistic soft tissue tissue injury to the anterior left deltoid without fracture, vascular injury, or sizable hematoma.

3. Acute gunshot wound to the left pelvis with incomplete transverse ballistic fracture of the left acetabulum, large pelvic sidewall hematoma involving the iliopsoas muscles without evidence of active bleeding, and questionable partial thickness distal descending colonic injury.

4. Remote ballistic injuries to the right abdomen and pelvis.

5. Through and through gunshot wound to the right posterior distal thigh without fracture, active bleeding, or sizable hematoma. Intact three-vessel runoff to both lower extremities.

---

[1] Undersigned counsel received approximately 900 pages of medical records from Shock Trauma and from Everything Must Change Behavioral health. Excerpts are included with this memorandum, but the complete records are available upon the Court's request.

Imaging showed that he had shrapnel in his chest and abdominal muscles, his sacrum, and right thigh.

Shock Trauma records reflect that doctors wanted Mr. Hillman to have a follow up appointment four to six weeks after his discharge, but he was instead incarcerated directly from the hospital and never received any follow up care.

Mr. Hillman reports that he still suffers significant abdominal and pelvic pain as a result of his injuries. He has been incarcerated continuously since his release from the hospital and has not had the opportunity to seek physical therapy or other medical care that is readily available in the community, but challenging to access while incarcerated.

In addition, Mr. Hillman has been incarcerated in multiple different pretrial detention facilities, which complicates continuity of medical care. He was first incarcerated in a state facility from the date of his arrest until he made his initial appearance in federal court in February of 2022. He then was taken to the Howard County Detention Center for several days, and then to Northern Neck Regional Jail. He remained at Northern Neck until his guilty plea in November of 2022, at which point he was transferred to the Federal Detention Center in Philadelphia, where he remains.

Each of these pretrial detention facilities is part of a different carceral system that contracts with the United States Marshals Service. As a practical matter, that means that Mr. Hillman must conduct a medical intake afresh every time he is moved. His medical records do not transfer with him. As a consequence, it has been very difficult for him to receive continuity of care, and he has experienced gaps in receiving pain medication.

### III. Mr. Hillman's personal history and characteristics weigh in favor of a sentence at the low end of the advisory guideline range.

As the presentence report ("PSR") reflects, Mr. Hillman had a tumultuous childhood that like many defendants who appear before the Court, led him to the streets. His single mother struggled with addiction in his young childhood. When she got sober, she worked constantly. As the youngest of his siblings, Mr. Hillman was left largely to fend for himself with only his older siblings to supervise him.

When Mr. Hillman was twenty-five, he was shot in the arm and hand. He had significant surgeries to repair the wounds, which, among other injuries, included several severed fingers. In the wake of those surgeries, Mr. Hillman was prescribed Percoset for pain management, and like so many, became addicted to opiates.

Mr. Hillman was arrested on this offense on August 12, 2021. Between May and July of 2021, Mr. Hillman was actively engaged in drug treatment through Everything Must Change Behavioral Health, in Baltimore, where he had voluntarily admitted himself for intensive outpatient treatment and suboxone maintenance therapy. His intake assessment reflected that upon admission he was experiencing symptoms of PTSD, opioid use disorder, and extreme poverty. *See* Everything Must Change Pre-Admission Assessment, May 24, 2021, Ex. 2.

Therapy notes reflect that for the first two months, Mr. Hillman was actively engaged in treatment:

Individual Assessment: Client was active and participated fully in discussions today. A normal amount of physical activity was exhibited by Client today. Client today spoke of how he needs to work on how to love himself and take care of the whole person that he is.

Progress: Client was verbally involved in the group. Client was active and participated fully in discussions and activity today.

Initially, all of the therapy notes were similar to that reproduced above. Mr. Hillman actively participated in group therapy multiple times each week.

However, near the end of July, Mr. Hillman's therapy notes reflect that he began to struggle more. Later notes reflect that he expressed anxiety about the effects his substance use disorder was having on his life and his family, and shame over his inability to manage his addiction. The last note, which recommended that he be stepped up to inpatient drug treatment, reflects a relapse:

> Drug Withdrawal/Intoxication:
> Mr. Hillman exhibits signs of withdrawal from a chemical. Agitation, seemingly secondary to withdrawal, is present. Signs of anxiety which appear to be secondary to withdrawal are present. Bilateral pupillary dilation is noted. Bilateral pupillary constriction is noted. Mr. Hillman is exhibiting signs of intoxication. Pupils are constricted. Pupils are dilated. Mr. Hillman exhibits signs that Delirium Tremens are present.

Medical records from Shock Trauma show that at the time he was arrested and shot, he tested positive for opiates upon admission to the hospital.

Mr. Hillman committed the instant offense under these conditions. He had taken a significant step toward sobriety and stability, but had relapsed. In his relapse, he was experiencing anxiety, which led him to carry a gun when he went out on the night in question.

Importantly, Mr. Hillman entered into drug treatment voluntarily. He was taking a significant step to improve his life. And though he did not succeed, he demonstrated the initiative he will need to succeed in the future.

A sentence of 21 months would be more than twice as long as Mr. Hillman has ever previously served in prison. Though Mr. Hillman does have a number of criminal convictions, the longest period of incarceration he has ever served prior to this offense is eight months on a

probation violation in 2008-09. PSR ¶ 28. Notably, even though the United States Probation

Office disagrees with the guideline calculation, the PSR recommends not only a sentence at the

low-end of the advisory guideline range, but also two, rather than the available three years of

supervised release.

### IV. The appropriate advisory guideline range is 21-27 months of incarceration because Mr. Hillman's prior conviction for Maryland robbery is not a "crime of violence."

The PSR in this matter sets forth an advisory guideline range of 37 to 46 months, finding

that Mr. Hillman has a total offense level of 17 and a criminal history category of IV. *See* PSR, ¶

74. As discussed below, Mr. Hillman's prior conviction for Maryland robbery does not qualify

as a "crime of violence" under U.S.S.G. § 2K2.1. The base offense level should therefore be 14,

pursuant to U.S.S.G. § 2K2.1(a)(6), and with credit for acceptance of responsibility, Mr.

Hillman's final adjusted offense level should be 12. The advisory guideline range is therefore 21

to 27 months.

Mr. Hillman's prior conviction for Maryland robbery (Md. Code, Crim. Law § 3-402)

categorically fails to qualify as a "crime of violence" under U.S.S.G. § 2K2.1 (which

incorporates the "crime of violence" definition under U.S.S.G. § 4B1.2(a)). In *Redacted v.

Redacted*, 2022 WL 4546737 (D.D.C. Aug. 29, 2022), Judge Walton of the United States District

Court for the District of Columbia recently held that Maryland robbery (Md. Code, Crim. Law §

3-402) categorically fails to qualify as a "crime of violence" under either the force clause or

enumerated offenses clause of U.S.S.G. § 4B1.2(a) because it can be committed by the negligent

or reckless use of force. In so holding, Judge Walton took no shortcuts. Instead, he carefully and

comprehensively analyzed Maryland law and followed pure logic to conclude that Maryland robbery is not a "crime of violence" after *Borden v. United States*, __U.S.__, 141 S. Ct. 1817 (2021).

Judge Kelly—also of the District Court for the District of Columbia—recently adopted Judge Walton's holding in *Redacted* to find that Maryland robbery is not a § 4B1.2(b) "crime of violence." (*United States v. Steedly*, 22-88-TJK (D. D. C. Nov. 30, 2022)). This Court should do the same.

### A. The categorical approach applies here.

Section 2K2.1 (the felon-in-possession guideline) defines a "crime of violence" via a cross-reference to U.S.S.G. § 4B1.2(a). Accordingly, for purposes of the felon-in-possession guideline, a "crime of violence" includes "any offense under federal or state law" that:

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a).

The first clause is known as the "force clause." The second clause is known as the "enumerated offenses clause."

To determine whether Maryland robbery qualifies as a "crime of violence" under § 4B1.2(a), this Court must apply the categorical approach. *United States v. Simmons,* 917 F.3d 312, 317 (4th Cir. 2019). Under this approach "the facts of a given offense" are irrelevant. *Borden v. United States*, __U.S.__, 141 S. Ct. 1817 (2021). "The focus is instead on whether the

elements of the statute of conviction" satisfy the "crime of violence" definition. *Id.* at 1822. "If any—even the least culpable—of the acts criminalized" under the statute do not match the terms of either the force clause or the enumerated clause, then the prior offense categorically fails to qualify as a § 4B1.2 "crime of violence." *Id.*

Applying the categorical approach here, Maryland robbery is not a "crime of violence" because it can be committed with the reckless or negligent use of force.

**B. Maryland robbery is not a "crime of violence" under the force clause of U.S.S.G. § 4B1.2(a) because it can be committed with the negligent or reckless use of physical force.**

After the Supreme Court's decision in *Borden,* 141 S. Ct. 1817, Maryland robbery categorically fails to qualify as a "crime of violence" under the § 4B1.2 force clause.

Specifically, in *Borden,* the Supreme Court held that crimes that can be committed with the reckless use of force are not "violent felonies" under the Armed Career Criminal Act (ACCA) force clause (18 U.S.C. § 924(e)(2)(B)(i)). 141 S. Ct. at 1822. Because the ACCA force clause is identical to the § 4B1.2(a)(1) force clause, *Borden* equally applies to the analysis here.

As Judge Walton held in *Redacted*, under *Borden*'s terms, Maryland robbery can no longer qualify as a § 4B1.2 "crime of violence" because it can be committed by the negligent or reckless use of force. *Redacted,* 2022 WL 4546737, at *6-10. Although Maryland robbery is codified under Md. Code, Crim. Law § 3-402, it retains its judicially determined meaning. Md. Code, Crim. Law § 3-401(e). And in *Snowden v. State,* 583 A.2d 1056, 1059 (Md. 1991), the Maryland Court of Appeals provided a clear judicial meaning of the crime: "It is larceny from

the person accomplished by either an assault (putting in fear) or battery (violence)." *Id.* That is, a larceny plus a battery, is sufficient to sustain a conviction for Maryland robbery.

As Judge Walton further recognized in *Redacted*, 2022 WL 4546737, at *6-7, Maryland courts have made explicit that "[a] criminal battery," in turn, "may be intentional or *unintentional*." *Elias v. State,* 661 A.2d 702, 709 (Md. 1995) (emphasis added). Specifically, "'a criminal battery is committed . . . if the contact was the result of the defendant's recklessness or negligence[.]'" *Id.* (quoting *Duckworth v. State,* 323 Md. 532, 540 (1991)) (internal brackets omitted); *see also Lamb v. State*, 613 A.3d 402, 455 (Md. Ct. Spec. App. 1992) (holding that "[a]n unintended battery . . . requires only a general intent to do [] the criminally negligent act or [] the unlawful act, with no thought being necessary as to the consequences of the act").

Therefore, one can commit Maryland robbery if he negligently or recklessly knocks someone down (battery) and thereafter decides to steal the victim's purse (larceny). This is exactly the type of reckless conduct that *Borden* held falls outside of the force clause. *See Borden,* 141 S. Ct. at 1821 (noting that force clause requires "a deliberate choice of wreaking harm on another, rather than mere indifference to risk").

And to be clear, as Judge Walton carefully explained, merely because Maryland robbery requires a specific intent to steal does not change this result because that intent "concerns the larceny element rather than the assault/battery element." *Redacted*, 2022 WL 4546737, at *7. In other words, although Maryland robbery requires a specific intent to steal, it does not require an intent to use force. *Id.* at *7-8.

Moreover, the battery need "not [b]e committed with the intent of effectuating the larceny." *Id.* Instead, in Maryland, "[s]o long as 'there [is] force followed by a taking with intent to steal as a part of the same general occurrence or episode[,]' then 'the intent to steal need not coincide with the force.'" *Id.* (quoting *Stebbing v. State*, 473 A.2d 903, 914 (Md. 1984)). Thus, "Maryland robbery condones the conviction of someone who recklessly used force and 'tak[ing] advantage of [the] situation[,]' . . . engaged in larceny." *Redacted,* 2022 WL 4546737, at *7 (quoting *Metheny v. State*, 755 A.2d 1088, 1105 (Md. 2000)).

For example, "as the Maryland Court of Appeals stated in *Stebbing*, 'if the force results in death, a taking and asportation after [the] death is nevertheless robbery.' 473 A.2d at 915. This hypothetical would involve two components: (1) the 'force [that] result[ed] in death[,]' *id.*—*i.e.*, the battery; and (2) the 'taking and asportation after [the] death[,]' *id.*—*i.e.*, the larceny. The battery [resulting in the death] need not have occurred intentionally—for example, a person recklessly running into someone and knocking them down a flight of stairs, or striking someone and while driving recklessly—for the entire offense to constitute robbery because it entailed larceny and [the reckless] battery 'as part of the same general occurrence or episode[,]' *id.*" *Redacted*, 2022 WL 4546737, at *7.

In short, "as defined by Maryland courts, Maryland robbery may be committed by the reckless [or negligent] use of force." *Redacted*, 2022 WL 4546737, at *7. Therefore, it is not a qualifying offense under the § 4B1.2(a) force clause.

Indeed, in its Supreme Court briefing in *Borden*, the Solicitor General conceded that Maryland robbery could be violated by the reckless use of force. Specifically, the Solicitor

General cautioned that if the Supreme Court found that reckless force was excluded from the force clause, then that would mean Maryland robbery as well as a handful of other states' robberies would not qualify as "crimes of violence" because they can be committed recklessly. *Brief for the United States*, *Borden v. United States*, 2020 WL 4455245, at *18 (June 8, 2020). Now that the Supreme Court has found that reckless offenses fail to qualify as "crimes of violence," this Court should accept the Solicitor General's concession that Maryland robbery is not a "crime of violence" for all the reasons Judge Walton noted in his meticulous decision.

      **1.** **The Fourth Circuit's decisions in *United States v. Johnson* and *United States v. Dickson* are inapposite.**

The Fourth Circuit's decisions in *United States v. Johnson,* 945 F.3d 174, 181 (4th Cir. 2019) and *United States v. Dickson*, 2022 WL 2340553 (4th Cir. June 29, 2021) do not warrant a different result. In both of these cases, the Fourth Circuit found that Maryland robbery was a qualifying offense under the force clause. But whether Maryland robbery can be committed by reckless force is not an issue that was briefed, addressed, or decided in either of these cases. Rather, the only issue addressed and decided in *Johnson* was whether Maryland robbery can be committed by the actus reus of de minimis force. 945 F.3d 174. And in *Dickson*, the only issue addressed and decided was whether Maryland robbery can be committed by threating force against property or sodomy accusations. 2022 WL 23040553. Because neither of these cases addressed the post-*Borden* mens rea issue now before this Court, they are not controlling and add nothing to the discussion.

The Fourth Circuit's decision in *United States v. Norman,* 935 F.3d 232, 240 (4th Cir. 2019) makes this point clear. In *Norman*, at issue was whether a federal conspiracy under 21

U.S.C. § 846 qualified as a "controlled substance offense" under U.S.S.G. § 4B1.2 even though it was not a generic conspiracy. The government argued that the Court was bound by previous Fourth Circuit precedent (*United States v. Kennedy*, 32 F.3d 876, 888 (4th Cir. 1994)) which had previously announced that such conspiracy was a § 4B1.2 "controlled substance offense." *Norman*, 935 F.3d at 240.

However, in *Norman*, the Fourth Circuit found that it was not bound by *Kennedy* because "as [it] and the Supreme Court have repeatedly recognized, such a 'passing observation' on an issue neither briefed nor disputed does not constitute a holding." *Id.* at 240 (citing *United States v. McLeod*, 808 F.3d 972, 977 (4th Cir. 2015) (the Fourth Circuit's previous summary statement that South Carolina burglary was "generic" did not control because "[t]he holding [in the previous decision] did not focus on that issue, as it was not briefed and argued to the court"); *United States v. Hemingway*, 734 F.3d 323, 335 (4th Cir. 2013) (holding that a previous case, which assumed a sentencing enhancement applied "did not dictate th[at] outcome" because the issue "was not contested"); *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993) ("since we have never squarely addressed the issue, and have at most assumed [it], we are free to address the issue on the merits")).

This same reasoning applies here. Because the Fourth Circuit's previous decisions in *Johnson* and *Dickson* did not address or decide whether Maryland robbery can be committed by the reckless use of force, they are inapposite here.

### 2. The reasoning of Judge Gallagher in *United States v. Anthony Evans* and Judge Bennett in *United States v. Randolph Wells* is unpersuasive.

In *United States v. Anthony Evans*, Case No. SAG-19-0505 (D. Md. Jan. 4, 2023), Judge Gallagher found that Maryland robbery remains a "crime of violence" under the force clause after

*Borden*.  But the Court did so after little reasoning and failing to respond to the above-discussed arguments.

*First,* Judge Gallagher found that *Johnson* and *Dickson* controlled the issue, even though as discussed above, the cases never even touched upon—let alone decided—the issue of whether Maryland robbery can be committed by the reckless use of force.  Judge Gallagher failed to explain how her decision on this point could be reconciled with the Fourth Circuit's decisions in *Norman, Campbell*, *McLeod*, and *Hemingway* and the Supreme Court's decision in *Brecht*—all of which held that a decision is not controlling on an issue that is neither briefed, argued, addressed, nor decided.

*Second,* Judge Gallagher summarily asserted that Judge Walton's analysis in *Redacted* was convoluted, but she failed to explain how.  Indeed, Judge Walton's analysis was the exact opposite.  The logic of the decision is simple and straightforward:  Because Maryland battery can be committed by the reckless use of force, and battery is incorporated into Maryland robbery, Maryland robbery can be committed by the reckless use of force too.

*Third*, Judge Gallagher opined that because Maryland robbery is a specific intent crime, then that necessarily means that it excludes the reckless use of force.  But in so stating, she overlooked the fact that Maryland only labels robbery a specific intent crime because the larceny element requires a specific intent—not because the battery element requires the intentional use of force.  As Judge Walton aptly noted in *Redacted,* 2022 WL 4546737, at *7, "Maryland robbery contains two elements: (1) larceny and (2) assault or battery."  The specific intent to which the government refers only concerns the larceny element—"*the intent to permanently deprive the*

14

owner of property"—rather than the assault/battery element. *Id.* As the Maryland Court of

Appeals has explained, Maryland robbery is only considered a specific intent crime because it

requires "an intent to steal"—not because it requires an intentional battery (*i.e.*, the intentional use

of force):

> Larceny is the fraudulent taking and carrying away of a thing without claim of right with
> the intention of converting it to a use other than that of the owner without his [or her]
> consent . . . *Because an intent to steal, the animus furandi, must be present, it follows
> that larceny, and therefore robbery, is classed as a specific intent crime.*

*Hook v. State*, 553 A.2d 233, 236 (Md. 1989) (emphasis added). Therefore, that Maryland

classifies robbery as a "specific intent" crime, does nothing at all to exclude reckless battery from

Maryland robbery.

    *Fourth*, Judge Gallagher stated that common sense means Maryland robbery qualifies as a

"crime of violence." But common sense has no place in "crime of violence" analysis under the

categorical approach. Rather, all that matters is whether the elements of the prior offense align

with the force clause. Indeed, the Fourth Circuit said exactly that in *United States v. Parral-

Dominguez*, 794 F.3d 440, 446 (4th Cir. 2015):

> Indeed, as the Government opened at oral argument, "common sense tells us that the
> North Carolina statute exists to protect people; this is not about property." Yet, nowhere
> does the Government cite authority that would permit us to set aside the Supreme Court's
> directive to "look only to" the *elements* of a prior offense. *Descamps*, 133 S. Ct. at
> 2283 (quoting *Taylor*, 495 U.S. at 600, 110 S. Ct. at 2283), and instead defer to . . .
> common sense. Indeed, [this] consideration would serve only as [a] distraction from the
> discrete, narrow assessment of a crime's underlying elements, as mandated by the
> Supreme Court in *Taylor* and *Descamps*.

*Id.*

*Fifth,* Judge Gallagher reasoned that no realistic probability exists that anyone in Maryland would ever be prosecuted for the reckless use of force because the defense has not pointed to a single case in which a defendant was actually convicted of Maryland robbery based on the reckless use of force. But in so stating, Judge Gallagher misunderstood the realistic probability test under both Supreme Court and Fourth Circuit precedent.

First, the Supreme Court's recent decision in *United States v. Taylor*, __U.S.__, 142 S. Ct. 2015 (2022), dramatically limits the Government's use of the realistic probability test. Under *Taylor*, the realistic probability test, rather than turning on "prosecutorial habits," only applies when the elements of the prior offense "clearly overlap" (*i.e.,* clearly match) with the force clause requirements. 142 S. Ct. at 2024, 2025.[2] Only then does the burden shift to the defendant to point to a case in which a state court applied the statute in a "special" way to conduct that falls outside of the "crime of violence" definition. *Id.* at 2025. However, there is no *clear* match here because as explained above, Maryland robbery incorporates a battery element which can be committed by reckless force, and no case law exists altering this element in the context of Maryland robbery. But the § 4B1.2(a) force clause requires the intentional use of force. Due to this mismatch, the realistic probability test does not apply.

---

[2]    "Clearly overlap" means a full overlap (*i.e.,* a clear match) between the predicate offense and the federal "crime of violence" definition. We know this because in *Taylor*, there was *some* overlap between the attempted Hobbs Act robbery statute at issue and the force clause. This was evident because attempted Hobbs Act robbery can be committed by an actual threat of force covered under the force clause (for example, when one makes an actual threat of force—as *Taylor* did in his case by discharging a weapon and killing the victim—but the robbery is not completed). Yet, the Supreme Court found that the realistic probability test did not apply based on this partial overlap because attempted Hobbs Act robbery can also be violated by an attempted threat of force, which falls outside of the force clause. 142 S. Ct. at 2026.

Second, even assuming (arguendo) that the realistic probability test still applies here after *Taylor*, it is satisfied. In both *United States v. Aparicio-Soria*, 740 F.3d 152, 157-58 (2014) (en banc) and *United States v. Proctor*, 28 F.4th 538, 552 (4th Cir. 2022), the Fourth Circuit held that the test is automatically satisfied when the state's highest court (here the Maryland Court of Appeals) has said (even in dicta) that an offense can be committed in a manner that falls outside of the "crime of violence" definition. This remains true even if the defense cannot point to a single case in which one was actually prosecuted or convicted for conduct that does not satisfy the "crime of violence" definition. *Id.*

More specifically, in *Aparicio-Soria*, the government argued that the defendant could not point to a single case in which Maryland resisting arrest was actually accomplished with de minimis force. *Id.* at 157. In fact, the government cited to 38 appellate resisting arrest cases—all of which involved violent physical force. *Id.* Therefore, the government argued that no "realistic probability" existed that the States would prosecute resisting arrest without violent physical force. *Id.* But the Fourth Circuit rejected the government's argument upon concluding that despite the government's "mountain of cases," the Court did "not need to hypothesize about whether there is a 'realistic probability' that Maryland prosecutors will charge defendants engaged in non-violent offensive physical contact with resisting arrest." *Id.* at 158. Rather, the Court concluded, "We know that they can because the state's highest court has said so." *Id.* The Court held as such even though the Maryland Court of Appeals had only said in dicta that Maryland resisting arrest can be committed by offensive physical contact. *Id.* at 156 n.4. Specifically, in *Nicholas v. State*, 44 A.3d 396, 409 (Md. 2012), the Maryland Court of Appeals (upon deciding a merger issue), stated

that the force required for sustaining a resisting arrest conviction was the same as "the offensive physical contact" that is required to find a defendant guilty of second-degree assault. It was only this single statement that disqualified resisting arrest as a "crime of violence" under the force clause. *Aparicio-Soria*, 740 F.3d at 155.

Likewise, in *Proctor,* 28 F.4th at 551-53*,* the government argued that no realistic probability existed that an assault with intent to prevent lawful apprehension would be prosecuted if de minimis force was used. There too, the defendant did not point to a single case in which any assault with intent to prevent lawful apprehension was committed with de minimis force. *Id.* at 552. Nonetheless, the Fourth Circuit found that the realistic probability test was satisfied because the statute incorporated the element of second-degree assault, which in turn, the Maryland courts had said could be satisfied with de minimis force. *Id.* at 547-48, 553. Likewise, in *United States v. White*, 24 F.4th 378, 380 (4th Cir. 2022) the Fourth Circuit found that Virginia robbery is not a qualifying offense under the force clause because the Virginia Supreme Court has said that it can be committed by threatening accusations of sodomy even though no one has ever been prosecuted in modern times for Virginia robbery based on this theory.

Applying the realistic probability test here, because the Maryland Court of Appeals has held that Maryland battery can be committed with negligent or reckless force, and that element is incorporated into Maryland's robbery statute, a realistic probability exists that a robbery would be prosecuted predicated on the reckless use of force. This conclusion is further reinforced by the Maryland Court of Appeals' clear holding that the battery need not be committed for the purpose of effectuating the robbery. Indeed, for these very reasons, in *Redacted,* Judge Walton (after

carefully walking through the realistic probability analysis) rejected the government's realistic probability argument:

> [T]he Maryland Court of Appeals has been clear that (1) robbery can entail a larceny plus a battery, where the specific intent to steal "need not coincide with the force[,]" *Stebbing*, 473 A.2d at 915; and (2) "a battery is committed . . . if the contact was the result of [the defendant's recklessness[,] *Duckworth v. State,* 594 A.2d 109, 112-13 (Md. 1991). . . . The Court therefore concludes that the Maryland Court of Appeals decisions [] provide the "realistic probability" that conduct that involved the mere reckless use of force could be charged as robbery under Maryland law.

*Redacted*, 2022 WL 4546737, at *9-10. This Court should hold the same.

On top of these reasons, in *United States v. Wells,* RDB-10-0665 (D. Md. Jan. 31, 2023), Judge Bennett emphasized that Maryland robbery continues to qualify as a "crime of violence" under the force clause after *Borden* because no single Maryland case has explicitly held that Maryland robbery can be committed with the reckless use of force. While that is true, as Judge Walton concluded, the combination of Maryland decisions discussed above—*Snowden*, *Elias*, *Duckworth*, *Stebbing*, and *Metheny*—necessarily dictate that Maryland robbery can be violated with the reckless or negligent use of force. Indeed, under this law, because Maryland battery can be committed recklessly and it is an element of Maryland robbery, then it must follow that Maryland robbery also can be committed recklessly.

Nonetheless, Judge Bennett (as well as Judge Gallagher) defied this simple logic and concluded that when Maryland battery attaches to Maryland robbery, it magically converts from a negligent/reckless mens rea to an intentional mens rea. But not a single case—not one—exists holding that the mens rea of battery under Maryland law is a chameleon-like requirement, necessitating intentional force in the robbery context but permitting negligent/reckless force in

another context.  Indeed, there is no such law in Maryland which elevates the mens rea of battery from the negligent/reckless use of force to the intentional use of force when it attaches to Maryland robbery.  Thus, the re-writing of Maryland law by Judges Bennett and Gallagher to erase negligent/reckless battery from robbery must fail.

The Fourth Circuit's decision in *Proctor*, 28 F.4th at 548-49, is instructive on this point. In that case, at issue was whether the Maryland offense of assault with intent to prevent lawful apprehension qualified as a "violent felony" under the ACCA force clause.  That offense incorporated Maryland's second degree assault element, which could be committed by a de minimis battery.  Nonetheless, the government argued that the "with intent to prevent lawful apprehension" element elevated the actus reus of the offense so that any battery under the statute required violent force.  *Id*.  The Fourth Circuit rejected the government's argument because it could not point to any legal authority which elevated the actus reus required under the statute from de minimis force to violent force.  *Id.*   In other words, there was no legal authority giving battery a "unique meaning" when attached to the assault with intent to prevent lawful apprehension statute.  *Id.*   Therefore, the Fourth Circuit refused to assign battery a different meaning in the context of this statute.

Likewise, no legal authority exists in Maryland that uniquely elevates the mens rea of battery when attached to robbery from a negligent/reckless mens rea to an intentional mens rea. Therefore, this Court must conclude that Maryland robbery can be committed with a negligent or reckless battery.

In short, this Court should follow Judge Walton's well-reasoned decision (rather than the unpersuasive decisions of Judges Bennett and Gallagher) to hold that Maryland robbery is not a qualifying offense under the § 4B1.2(a) force clause.

### C. Maryland robbery is not a "crime of violence" under the § 4B1.2(a) enumerated offenses clause because it can be committed with the reckless or negligent use of force—rendering it non-generic.

Additionally, Maryland robbery fails to qualify as a "crime of violence" under the § 4B1.2(a)(2) enumerated offenses clause because it is not generic. It is well established that an offense, regardless of its label, only falls within the scope of that clause if it satisfies the generic definition of a crime listed therein (here robbery). *United States v. McCollum,* 885 F.3d 300, 307-08 (4th Cir. 2018). The generic definition of a crime "roughly correspond[s] to the definitions of [the crime] in a majority of the States' criminal codes." *Taylor v. United States*, 495 U.S. 575, 589 (1990); *see McCollum,* 885 F.3d at 307-08 (the generic meaning of a crime "will typically correspond to the sense in which the term is now used in criminal code of most states") (citation omitted).

Thus, the generic definition of robbery is determined by what most states do, and most states that have decided the issue exclude reckless force from their robbery definitions. In *Redacted,* Judge Walton found exactly as such after meticulously conducting a 50-state survey. His survey revealed that of the states that have decided the issue, "eight states explicitly or implicitly permit the charging of robbery for the reckless application of force" while "twenty-five states explicitly or implicitly do not permit the charging of robbery for the reckless application of force." *Redacted*, 2022 WL 454677, at *15. As Judge Walton concluded, because

there are "a substantially higher number of states that do not authorize charging robbery based on the reckless use of force by the perpetrator, as compared to the small number of states that do . . . . the contemporary generic version of robbery includes an element of the intentional or knowing use of force exerted for the purpose of taking the property of another." *Id.* at *16. Under these terms, "[b]ecause Maryland robbery criminalizes the reckless use of force . . . it is not a match for the generic definition [.]" *Id.* at *17. Therefore, "Maryland robbery is also not a crime of violence under the enumerated offenses clause." *Id.*

In conclusion, Maryland robbery is not a "crime of violence" under U.S.S.G. § 4B1.2(a) because it can be accomplished with the negligent or reckless use of force, which neither the force clause nor the enumerated offenses clause tolerates. In turn, Maryland robbery is not a "crime of violence" under U.S.S.G. § 2K2.1.

## V.    Conclusion

For the foregoing reasons, a sentence of 21 months of incarceration, with two years of supervised release to follow, is the appropriate sentence in this matter.

Respectfully submitted,

JAMES WYDA

Federal Public Defender for the District of Maryland

_____/s/_____
Laura Ginsberg Abelson
Assistant Federal Public Defender
Office of the Federal Public Defender
100 S. Charles St.
Tower 2, 9th Floor
Baltimore, MD 21201
Telephone: (410) 962-3962
laura_abelson@fd.org

22