**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **Criminal No. ELH-22-0034** |
| | * | |
| **TERRENCE HILLMAN,** | * | |
| | * | |
| **Defendant.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

<u>**RESPONSE TO DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**</u>

The Government writes this memorandum in advance of the Defendant Terrence Hillman's sentencing hearing, currently scheduled for Wednesday, March 22, 2023 at 10 a.m. For the reasons that follow, this Court should impose a sentence of 70 months' imprisonment, followed by three years of supervised release for the Defendant's Count One conviction.

I.      **BACKGROUND**

A.      **Defendant's Conduct[1]**

On August 12, 2021, at approximately 1:50 a.m., Baltimore Police Department ("BPD") detectives were notified of an officer-involved shooting in the 300 block of E. Baltimore Street. BPD officers were in the 400 block of E. Baltimore Street approaching Holliday Street when they observed a physical altercation between an unidentified male and a group of unidentified females. **Officers observed the Defendant, Terrence Hillman, approach the group from the unit block of Holliday Street and point a firearm in the direction of both the group involved in the altercation and one of the officers**.

---

[1]      The conduct described herein is the Government's version of the Defendant's conduct as articulated in the Factual Statement from the Government's Plea Letter, submitted to the Court on October 14, 2023. *See attached* Exhibit 1. There is no agreement between the parties as to the facts highlighted in bold.

1

The Defendant then fled on foot westbound in the 300 block of E. Baltimore Street with the firearm still in his hand. An officer followed in pursuit. **During the flight, the Defendant abruptly turned toward the pursuing officer while still holding the firearm, raising it toward the officer**. The officer fired his service weapon striking the Defendant multiple times. As the Defendant fell to the ground, a silver firearm with a brown, wooden handle fell from his hand. This interaction was recorded on closed-circuit television (CCTV).

Recovered from the scene was one silver Taurus model 80 .38 special revolver, bearing serial number 771430 and loaded with two Winchester cartridges, .38 caliber special jacketed flat nose ammunition.

The firearm was test-fired and found to be inoperable as received. Attempts to test-fire resulted in light firing pin strikes being left on the primers of the cartridges. Firearm examiners tightened the hammer spring tension screw, the firearm was test-fired again, and found to be operable, thereby meeting the definition of a firearm pursuant to 18 U.S.C. § 921. The firearm was found to be readily convertible to an operable firearm. The ammunition also meets the definition of ammunition pursuant to 18 U.S.C. § 921. The Defendant knowingly possessed the firearm. Prior to possessing the firearm, the Defendant had been convicted of a crime punishable by imprisonment for a term exceeding one year, his civil rights had not been restored, and he had knowledge of this status when he possessed the firearm. Both the firearm and ammunition that the Defendant possessed affected interstate commerce, as they were manufactured outside of the State of Maryland.

### B.    Indictment and Guilty Plea

On February 1, 2022, the Defendant was charged in a single-count Indictment with possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1) (Count One).

ECF No. 1 (Indictment). On November 9, 2022, the Defendant pled guilty to Count One of the Indictment. ECF No. 39 (Arraignment). On February 13, 2023, this Court issued an Order scheduling a sentencing hearing for March 22, 2023. ECF No. 47.

## II.      STATUTORY PENALTIES AND ADVISORY GUIDELINES CALCULATION

The statutory maximum penalty for Count One is ten years' imprisonment. 18 U.S.C. § 924(a)(2) (2021). On January 19, 2023, the United States Probation Office issued a Presentence Investigation Report ("PSR"). The PSR properly calculates a base offense level of 20 for the Defendant's Count One conviction because the Defendant committed the instant offense subsequent to sustaining a felony conviction for a crime of violence—specifically, the Maryland offense of robbery. PSR ¶ 32; *see* U.S.S.G. § 2K2.1(a)(4)(A). The Government moves for an additional 4-level upward adjustment pursuant to U.S.S.G. § 2K2.1(b)(6)(B) because the Defendant possessed the firearm and ammunition in connection with another felony offense, that is, felony assault by pointing the firearm at both the crowd of individuals prior to fleeing law enforcement and the pursuing officer during the flight. *See* Exhibit 1 (October 14, 2022 Government Plea Letter) at ¶ 6. Following a 3-level downward adjustment for acceptance of responsibility, the final offense level is 21.

The PSR correctly computes a points-based criminal history category of IV. PSR ¶¶ 33-35. Thus, the Defendant's applicable advisory guidelines range for sentencing is 57 to 71 months.[2]

The Defendant disputes that the base offense level is 20, arguing that the correct base offense level for his Count One conviction under U.S.S.G. § 2K2.1(a) is 14 because he has not been previously convicted of a felony "crime of violence," resulting in an adjusted advisory

---

[2]      The Government objects to the Guidelines calculations as reflected in the PSR due to the absence of the 4-level upward adjustment pursuant to U.S.S.G. § 2K2.1(b)(6)(B).

guideline range of 21 to 27 months. *See* ECF No. 48 (Def. Sentencing Memo). In support of his position, the Defendant primarily relies on an unpublished, redacted opinion out of the District Court for the District of Columbia. Based on that decision, he argues that his 2018 Maryland conviction for robbery does not qualify as a "crime of violence" as defined in the Guidelines because it can be committed through the negligent or reckless use of physical force. *Id.*

## III.   MARYLAND ROBBERY QUALIFIES AS A  "CRIME OF VIOLENCE" UNDER THE GUIDELINES

Congress has directed that repeat offenders should be punished more severely.  Congress made these directives express when creating the U.S. Sentencing Commission and outlining how the Sentencing Guidelines should operate.  Specifically, Congress directed that the Guidelines must take into account a defendant's "criminal history" in establishing sentencing ranges, 28 U.S.C. § 994(d)(10), career offenders should receive a guidelines range "at or near the maximum term authorized" by law, *id.* § 994(h), and recidivist defendants with prior convictions should receive a guidelines range of "a substantial term of imprisonment," *id.* § 994(i)(1).

The provisions of U.S.S.G. § 2K2.1(a)(4) are a representation of these congressional directives and represent the common-sense position that recidivists ought to have higher guidelines and be punished more severely.  Specifically, these provisions impose a higher base offense level for defendants who are found to be in possession of firearm "subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense."  *Id.*  The term "crime of violence" "has the meaning given that term in §4B1.2(a) and Application Note 1 of the Commentary to §4B1.2."  *Id.* at Application Note 1.

Section 4B1.2 in turn defines a "crime of violence" as

any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

4

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a).

Against this background, it is clear that the Defendant's prior conviction for Maryland robbery, in violation of Md. Crim. Law Code Ann. § 3-402, is a "crime of violence" under the Guidelines.  This is so for at least three reasons.

### A.     The Fourth Circuit Precedent Set Forth in *Johnson* Controls this Question

First, this Court should conclude that Maryland robbery is a crime of violence because that is precisely what Fourth Circuit precedent dictates.  In *United States v. Johnson*, 945 F.3d 174, 181 (4th Cir. 2019), the Court of Appeals held that "Maryland robbery may be committed by force or threat of force, and each way satisfies the ACCA's force clause.  Thus, Maryland robbery constitutes a violent felony under the ACCA."  It is well-settled that "the force clause of the [ACCA] . . . is identical to and applied the same as the force clause in § 4B1.2(a)(1)." *United States v. Gattis*, 877 F.3d 150, 155 (4th Cir. 2017).  Hence, because the Fourth Circuit in *Johnson* expressly held that the application of force in Maryland robbery satisfies the force clause in the ACCA, it necessarily meets the force clause under the Guidelines.  Given the Court's holding, this Court must now reject the Defendant's argument and hold that Maryland robbery is a crime of violence under the force clause of the Guidelines.  *Johnson* should end the matter.

And if that were not enough, the Fourth Circuit re-affirmed that Maryland robbery counts as a crime of violence under the Guidelines just this past year in *United States v. Dickson*, 2022 WL 2340553 (4th Cir. June 29, 2022).  That appeal concerned the very Guidelines provision at

issue here, U.S.S.G. § 2K2.1.  And just as the Defendant is doing here, Dickson claimed he was not a base offense level 20 because his prior Maryland robbery conviction did not count as a crime of violence.  In that appeal, the Court certified a question of state law to the Maryland Court of Appeals, namely, whether Maryland robbery could lie with a mere threat to personal reputation, or a threat to injure property.  Maryland's highest court answered both questions in the negative and held that Maryland robbery required the exercise of violent force or the threat of violent force. *Dickson v. United States*, 478 Md. 255 (2022).  Specifically, the Court noted that "the essence of Maryland robbery is the use of 'violence' or 'putting in fear' to take property from another's person." *Id.* at 276.  Based on this holding, the Fourth Circuit affirmed that Dickson was properly assigned a base offense level 20 given his prior Maryland robbery conviction.  *See* 2022 WL 2340553 at *4.

These precedents control here.  Unless and until the Fourth Circuit sitting en banc reverses itself in *Johnson*, this Court is bound to hold that Maryland robbery satisfies the force clause and hence must be deemed a crime of violence under the Guidelines.[3]

### B.      Alternatively, the Offense is a Controlled Substance Offense under *Ward*

Second, even if we do a deep dive into Maryland case law, it is clear that Maryland robbery easily satisfies the crime of violence definition in U.S.S.G. § 4B1.2.  And it meets this standard

---

[3]      While the defense might argue that *Johnson* can be ignored because the specific flavor of argument they are raising now was not raised in the *Johnson* appeal, this contention slices the notion of "precedent" much too thin.  If published Fourth Circuit decisions can be cast aside so blithely every time a defense attorney comes up with some new stripe of argument to try to attack the very same question that was previously decided by the Fourth Circuit, then there is no precedent. That is a recipe for judicial chaos in which no issue is ever fully and finally decided. This Court should reject such a dangerous construct where Circuit law is so ephemeral and shapeless. *Johnson* controls unless and until the Defendant can convince the Fourth Circuit sitting en banc to change the law.

notwithstanding the latest defense claims that Maryland robbery can somehow be perpetrated with a reckless mens rea. It cannot. This is so for a number of reasons.

First, Maryland courts have consistently and expressly indicated that Maryland robbery is a "specific intent crime." The case law on this point is legion:

- *Coles v. State*, 821 A.2d 389, 395 (Md. 2003) (noting that "'robbery is a specific intent crime'") (citation omitted);

- *Metheny v. State*, 755 A.2d 1088, 1105 (Md. 2000) ("robbery[] is classed as a specific intent crime");

- *Harris v. State*, 728 A.2d 180, 188 (Md. 1999) ("we note that robbery is a specific intent crime");

- *Hook v. State*, 553 A.2d 233, 236 (Md. 1989) ("Robbery is a specific intent crime.");

- *State v. Gover*, 298 A.2d 378, 381 (Md. 1973) ("robbery, is classed as a specific intent crime");

- *Fetrow v. State*, 847 A.2d 1249, 1256 (Md. App. 2004) ("robbery is a specific intent crime");

- *Smith v. State*, 398 A.2d 426, 443 (Md. App. 1979) (including "robbery" as part of the "larger class 'specific intent'" crimes).

The Court in *Smith* further elucidated what it means to be a specific intent crime under Maryland law. Specifically, the Court noted that "Each of these [specific intent crimes] requires not simply the general intent to do the immediate act with no particular, clear or undifferentiated end in mind, but the additional deliberate and conscious purpose or design of accomplishing a very specific and more remote result." 398 A.2d at 443.

There is a mountain of precedent which demonstrates that Maryland robbery is a specific intent crime. These cases provide no room for any argument to be made that any part of a robbery can be committed with a reckless mens rea. The government is aware of no Maryland case which says Maryland robbery can be committed with a reckless mens rea. And the Defendant has not

cited to any such Maryland case either.  That should be more than sufficient to thwart any claim by the Defendant that Maryland robbery can somehow be committed with a reckless mens rea. There is no substantiation that exists in the law to that argument.  Rather, all the Maryland case law supports the contrary position.  This should end the matter.  *See United States v. Parker*, 213 F.4th 178, 181 (5th Cir. 2021) (holding that "[*Borden*] does not affect our holding in this matter because Louisiana armed robbery is a 'specific intent crime'").

Second, Maryland courts have consistently held that robbery requires the taking to be accomplished "by" the "use" of "violence" or the "threat" of violence.  These elements require an *intentional* application of force to accomplish a specific purpose, as opposed to a mere reckless application of force.  Specifically, Maryland robbery "is defined as the felonious taking and carrying away of the personal property of another from his person *by* the *use* of *violence* or by putting in fear."  *See Williams v. State*, 490 A.2d 1277, 1280 (Md. 1985) (emphasis added); *accord West v. State*, 539 A.2d 231, 233 (Md. 1988) ("We have defined the offense [of robbery] as the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence or putting in fear.").  The application of "violence must accompany or precede the robbery."  *See also Stebbing v. State*, 473 A.2d 903, 913 (Md. 1984).  These definitions demonstrate that the use of violence in furtherance of a robbery is purposeful violence.  The violence is used to facilitate the taking.  The definitions of robbery provided in the case law require the actus reus of violence to be done intentionally.  Case law further supports this notion that the application of force must be intentional for robbery, which is in contrast to the mens rea required for reckless endangerment.  *See Riggs v. State*, 2015 Md. App. LEXIS 623 (Md. App. Nov. 17, 2015) ("To be sure, attempted robbery requires proof of a specific intent to harm, whereas reckless endangerment may be proved without evidence of such intent.").  Moreover, this issue comes into

even greater focus when we consider the Maryland cases which define the use of force or the threat of force as enough to overcome the resistance of the victim. *See Spencer*, 30 A.3d at 896. Patently, if the defendant is acting to overcome resistance, the defendant is acting with purposeful intent to overcome that resistance and effectuate the taking. *See United States v. Ash*, 17 F.4th 962, 963 (10th Cir. 2021) (affirming that Kansas robbery statute requires intentional, not reckless, mens rea because the perpetrator must overcome the resistance of the victim, which necessarily requires an intentional act). Based on these definitions and cases, there is no basis to reach any conclusion other than that the use of force for a robbery is intentional and purposeful. *See United States v. Belcher*, 40 F.4th 430, 431 (6th Cir. 2022) (construing Tennessee robbery statute and holding that the force application requires intentional conduct because the violence is directed at the person of the victim) ("For violence to be 'offered' in this context, the defendant must do the offering, meaning he must intend to threaten force.").

Third, the Maryland Pattern Jury Instructions further support the finding that robbery is a specific intent crime. These instructions provide that, "the State must prove: (1) that the defendant took the property from [(name)] [(name's) presence and control]; (2) that the defendant took the property by force or threat of force; and (3) that the defendant intended to deprive (name) of the property." Md. Pattern Jury Inst. 4:28 (emphasis added). There is nothing in the second element which would permit a jury to use recklessness as a mens rea for the application of force. Rather, the taking must be "by force or threat of force." That denotes a purposeful act to accomplish a specific result, i.e. the application of violence, to achieve the taking. In this way, the specific intent permeates the entire actus reus, which includes both the act of the application of force and the act of the taking. *See Cooper v. State*, 86 A.2d 579, (Md. App. 1972) (approving of jury instruction which provided that "Criminal intent is an essential element of robbery and it must be ascertained

and determined from the words, acts and conduct of the accused . . . .").  In this way, the jury instructions further compel a finding that Maryland robbery is a specific intent crime.

Fourth, this Court should deem Maryland robbery a "crime of violence" because that is precisely how the Maryland legislature has classified Maryland robbery for state sentencing purposes.  Specifically, Maryland robbery is listed as a "crime of violence" for state sentencing enhancement purposes under Md. Crim. Law Code Ann. § 14-101(a)(9).  Given that the categorical approach is driven by how state courts and legislatures define state law, this should be powerful evidence that this Court should hold Maryland robbery counts as a crime of violence under federal standards as well.

Fifth, this Court should reject the Defendant's "recklessness conjecture" because it is nothing more than legal imagination that is not grounded in any Maryland decision showing Maryland prosecutors actually prosecuting a reckless application of force as a robbery.  If one looks at the Maryland cases that have considered the force element in Maryland robbery, they all demonstrate the intentional use of violent, physical force or the threat thereof.  *See Raiford v. State*, 447 A.2d 496, 500 (Md. App. 1982) (affirming robbery conviction where the defendant "ripped [her] shoulder strap bag off [her] shoulder" which caused her to scream); *Williams v. State*, 256 A.2d 776, 778 (Md. App. 1969) (concluding that mugging which overpowered manual resistance of victim was a robbery, as opposed to larceny, because "more force . . . [was] used than was necessary to a mere act of snatching").  Indeed, even where the force element was deemed not to be sufficient for robbery because the quantum of force was not violent enough, the application of de mininis force was still intentional and not reckless.  *See West*, 539 A.2d at 234-35 (vacating robbery conviction because "the victim was never placed in fear, she did not resist, and she was not injured" when her purse was snatched from her hand); *Cooper*, 265 A.2d at 571 (overturning

robbery conviction where defendant had placed his hand on the victim's back and the victim felt defendant's hand touch his body as it entered his pocket and stole his wallet, which startled him). There is simply no case where Maryland robbery has ever been upheld based on a reckless use of force.  This is dispositive.  *See Moncrieffe v. Holder*, 569 U.S. 184, 206 (2013) (holding that "[t]o defeat the categorical comparison" by alleging non-qualifying violations of a statute, a defendant must "demonstrate that the State actually prosecutes the relevant offense in cases" in the manner imagined by the defendant).  Indeed, as the Supreme Court has noted: "to find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues."  *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

The Defendant here utterly fails to meet the Supreme Court's "realistic probability" test. This is yet another reason to reject his claims and hold that Maryland robbery counts as a crime of violence.  *See United States v. Bragg*, 44 F.4th 1067, 1081 (8th Cir. 2022) ("With this guidance from the [Illinois] Supreme Court as to the mens rea element inherent in armed robbery, we see no realistic probability that a person would be charged with and convicted of Illinois armed robbery based on merely reckless conduct.").

In sum, there is a plethora of reasons to hold that Maryland robbery is a specific intent crime, that cannot be committed by mere reckless conduct, and hence qualifies as a "crime of

violence" under the guidelines.  And nothing in the Defendant's sentencing memorandum compels a contrary result.

First, while the Defendant relies on an unpublished opinion out of the District of Columbia, this is no help.  This Court is bound by Fourth Circuit precedent (*Johnson*), not an unpublished, out of circuit, redacted district court opinion that arose in the context of a violation of supervised release proceeding.

Second, to the extent the Defendant attempts to argue that Maryland robbery can somehow be committed with a reckless mens rea, he is simply wrong.  As detailed above, the mountain of cases cited above all indicate Maryland robbery is a "specific intent" crime, and the Defendant cites no Maryland case to the contrary.

Moreover, the Defendant is wrong to claim that one can dissect finely between the mens rea required for the taking (which he admits must be done intentionally) and the mens rea required for the application of force.  Maryland law provides that "the totality of the circumstances that surround the taking must be considered" as a whole.  *Ball v. State*, 699 A.2d 1170, 1185 (Md. 1997).  Further, courts have made clear that "[w]here a statute specifies the mens rea, courts ordinarily interpret it as applying throughout the statute."  *Larios v. Att'y Gen. United States*, 978 F.3d 62, 71 (3d Cir. 2020); *cf. McFadden v. United States*, 576 U.S. 186, 191 (2015) (holding that the "knowing" mens rea applies to the entirety of the provisions in this part of the Controlled Substances Act).  In this way, under the default position under *Larios*, and under the general language in the above-cited Maryland cases, these cases speak of a singular mens rea that applies to the entirety of the actus reus of the crime of Maryland robbery.  In other words, the cases do not say that Maryland robbery requires only a specific intent to effectuate the taking.  Rather, the cases say broadly that Maryland robbery requires a mens rea of specific intent.  That definition, therefore,

applies to the entirety of the crime.  There is no basis in any Maryland decision to suggest that there is one mens rea for the taking element and a different mens rea for the application of force element of Maryland robbery.

And while this issue should be decided under Maryland law, other courts considering similar challenges to similar robbery statutes have reached the same conclusion that a singular intentional mens rea applies throughout the actus reus elements of robbery, and that recklessness is not enough.  *See United States v. Bragg*, 44 F.4th 1067, 1078 (8th Cir. 2022) (rejecting the argument that Illinois robbery could be committed through reckless conduct); *United States v. Horsting*, 678 Fed. Appx. 947, 950 (11th Cir. 2017) ("[W]e still require, for purposes of [18 U.S.C.] § 2113(a), the government to prove that the accused knowingly took the property and that he knew his actions were objectively intimidating. As a result, contrary to Horsting's claim, reckless or negligent conduct is not included in the mens rea for § 2113(a) robbery."); *United States v. Morris*, 2022 WL 4389516 (M.D. Pa. Sept. 21, 2022) ("Hence, because [18 Pa. Cons. Stat.] § 3701(a)(1)(ii) robbery requires intent, *Borden* does not present a barrier to finding that the offense satisfies the elements clause."); *United States v. Giles*, 2022 WL 2791353 (N.D. Ill. July 15, 2022) ("But federal bank robbery committed in violation of § 2113(a) continues to be a crime of violence even after *Borden*. Contrary to Giles's contention, the offense requires more than recklessness and therefore meets *Borden*'s mens rea requirement.").[4]

---

[4]     And *Horsting*'s and *Giles*' holdings as to federal bank robbery are particularly relevant here inasmuch as Maryland courts have looked to federal bank robbery cases to construe the contours of Maryland robbery.  *See Coles*, 821 A.2d at 397 (consulting federal bank robbery cases to construe Maryland robbery by intimidation)*; see also Dixon v. State*, 488 A.2d 962, 967 (Md. 1985) (consulting federal bank robbery cases to construe Maryland assault with intent to rob statute).

These holdings also provide another admonition:  to agree with the defense as to Maryland robbery here would imperil federal bank robbery as a crime of violence.  This would be adverse

Nor can the Defendant find any refuge in *Metheny v. State*, 755 A.2d 1088 (Md. 2000).  As an initial matter, *Metheny* confirmed that "robbery[] is classed as a specific intent crime."  *Id.* at 1091.  And while the Defendant is correct that the Court held that the intent to steal can form after the application of violence, that says nothing about the mens rea required for the application of violence in the first place.  In other words, while the specific intent to steal might form later, there still must be a *specific intent* to do the initial violence as well for robbery to lie.  As detailed above, the specific intent mens rea runs throughout the entirety of the crime and applies to both the force element and the taking element.  Indeed, in *Metheny*, the defendant "used his hands and an extension cord to strangle" and murder his victim, and thereafter he took her purse.  *Id.* at 1095.  This was hardly a reckless application of force.  *Metheny* is thus no help to the Defendant.

Nor may the Defendant gain any traction by trying to reduce robbery into simple larceny plus simple battery.  Specifically, while the Defendant seizes on some shorthand snippet phrases out of various Maryland cases to claim that if robbery is merely larceny plus battery, and simple battery can be committed with unintentional conduct, then robbery can be committed by unintentional conduct.  The Fourth Circuit rejected this precise syllogistic argument in *Johnson*. *See* 945 F.3d at 181.  It is worth quoting the Fourth Circuit here in some length because it shows the current defense argument is simply a re-tread of the very argument that the Fourth Circuit rejected three years ago.  Specifically, the Court noted as follows:

> He [Johnson] hangs his hat on a snippet from *Snowden v. State*, 321 Md. 612, 583 A.2d 1056 (Md. 1991). He directs us to the following: "Robbery is a compound larceny. It is a larceny from the person accomplished by either an assault (putting in fear) or a battery (violence)." *Id.* at 1059. Johnson argues that because battery requires only an offensive touching, so too does Maryland robbery. But that argument overlooks the parenthetical "(violence)" in *Snowden*, which [**14] confirms that Maryland would punish larceny accomplished by violent physical

___

to *United States v. McNeal*, 818 F.3d 141, 152 (4th Cir. 2016), which expressly held that federal bank robbery is a crime of violence.  This is yet another reason to reject the Defendant's position.

> contact as robbery, but not necessarily larceny accomplished by offensive, less than violent, physical contact. Moreover, the immediately preceding sentence in *Snowden* fatally undermines Johnson's argument, for there the *Snowden* court explained: "'Robbery' is also a common law crime and refers to the felonious taking and carrying away of the personal property of another, from his person or in his presence, *by violence or putting in fear*." *Id.* (emphasis added).

*Johnson*, 945 F.3d at 181.  As the Fourth Circuit noted, robbery requires not just simple, unintentional contact like a battery; rather, it requires "*violence*." Violence against a person to effect a taking cannot be unintentional.  It is necessarily purposeful.  Pursuant to *Johnson*, this Court must utterly reject the Defendant's reductio ad absurdum argument that ignores the very definition of robbery, i.e. that violence (not just a mere battery) is the hallmark of what makes robbery in fact robbery.  *See also United States v. Williams*, 239 F.4th 342, 349 (6th Cir. 2022) (rejecting similar argument as to Kentucky robbery statute) ("Williams also argues that because robbery is normally thought of as theft combined with assault, and assault can be accomplished wantonly or recklessly, section 515.030's physical force requirement can be satisfied by mere reckless conduct. We find this argument unavailing . . . .").

In sum, notwithstanding the Defendant's arguments to the contrary, *Johnson* controls and this Court should hold that Maryland robbery satisfies the force clause and hence is a crime of violence under the Guidelines. Accordingly, the applicable base offense level for the Defendant's conviction is 20.

### C.    Two Courts in this District Recently Rejected the Defendant's Position

On January 4, 2023, the Honorable Stephanie A. Gallagher of this Court addressed this issue in *United States v. Anthony Evans*, Case No. SAG-19-0505 (D. Md. Jan 4, 2023) and found that Evans' prior Maryland robbery conviction qualified as a "crime of violence" under the Guidelines. There, Judge Gallagher ultimately concurred with the Government's foremost

argument, finding that "[...] the precedent the Fourth Circuit has announced in *Johnson* and *Dickson* is binding on me at present. I have to follow the Fourth Circuit determinations that Maryland robbery is a crime of violence." Exhibit 2 (*U.S. v. Evans*, Case No. SAG-19-0505, Transcript of Sentencing Hearing) at 24-25. With regard to the strength of the argument advanced by Evans, Judge Gallagher reasoned as follows:

> I have reviewed what Judge Walton did in the *Redacted* case. I do find the line of logic to be somewhat convoluted. Maryland courts have repeatedly reiterated that robbery is a specific intent crime. They've never parsed it in the way that I'm being asked to parse it here and have never found a reckless application of force to suffice principally because it has never come up. Nobody has ever tried to prosecute a robbery for reckless use of force.

Ex. 2 at 25.

In line with Judge Gallagher's decision in *Evans*, the Honorable Richard D. Bennett concluded in *United States v. Randolph Wells*, Case No. RDB-10-0665 (D. Md. Jan 31, 2023) that Maryland robbery continued to qualify as a "crime of violence" post-*Borden*. Exhibit 3 (*U.S. v. Wells*, Case No. RDB-10-0665, Transcript of Sentencing Hearing) at 69-74. In doing so, Judge Bennett emphasized the lack of Maryland case law explicitly holding that Maryland robbery can be committed by reckless force, Ex. 3 at 73 ("There is simply no basis for me to believe that that basis of the robbery here can be committed with a reckless mens rea, and I know of no Maryland case which has held the same."); the abundance of Maryland cases indicating that Maryland robbery is a specific intent crime, *Id*. ("I also look to Maryland cases that have repeated continually that robbery is a specific intent crime, as has been noted by the Government."); and the Maryland Pattern Jury Instructions and State sentencing laws, which reinforce the conclusion that Maryland robbery is a specific intent crime, *Id*. at 73-74.

Thus, two Courts in this District have already rejected arguments identical to the one raised in the instant case.

### D. Maryland Robbery Also Qualifies as a "Crime of Violence" Under the Enumerated Clause

Alternatively, in addition to satisfying the force clause, Maryland robbery also qualifies as a crime of violence under the enumerated clause of U.S.S.G. § 4B1.2(a)(2) because its elements match those of the generic crime. That is, robbery is an enumerated offense and Maryland robbery falls within the generic definition of robbery.

To determine whether a crime fits one that is enumerated, courts must "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—i.e., the offense as commonly understood." *Descamps v. United States*, 570 U.S. 254, 257 (2013). A crime is an enumerated offense where "its elements are the same as, or narrower than, those of the generic offense." *Mathis v. United States*, --- U.S. ---, 136 S. Ct. 2243, 2247 (2016). To hold that a crime is outside the scope of a generic offense's definition, a court must find "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Duenas-Alvarez*, 549 U.S. at 193.

"[G]eneric robbery is defined as the 'misappropriation of property under circumstances involving [immediate] danger to the person,'" and "the 'immediate danger' element in that definition is categorically satisfied by the taking of property 'from a person or a person's presence by means of force or putting in fear.'" *United States v. Gattis*, 877 F.3d 150, 156-57 (4th Cir. 2017) (alteration in original); *see also, e.g., United States v. Lockley*, 632 F.3d 1238, 1244 (11th Cir. 2011) (quoting *United States v. Walker*, 595 F.3d 441, 446 (2d Cir. 2010)) (defining generic robbery as "'the taking of property from another person or from the immediate presence of another person by force or intimidation'").

The Maryland definition, described above, is coextensive with, if not narrower than, the generic definition: both offenses require the taking of property of another from her person or

presence, by force or threat of force.  *See Coles*, 821 A.2d at 394.  Because robbery is an enumerated offense in U.S.S.G. § 4B1.2(a)(2) and because Maryland robbery is generic, Maryland robbery is a crime of violence.  *Accord, e.g., Gattis*, 877 F.3d at 156 (finding that North Carolina common law robbery categorically qualified as "robbery," as that term was used within § 4B1.2(a)(2)).

And again, the Defendant is wrong to argue that somehow Maryland robbery is not generic because it can be committed with a reckless mens rea.  That is wrong for the reasons outlined above; Maryland law makes clear that robbery is a specific intent crime.  But even if he were correct, Maryland robbery would still count as generic robbery.  As the Fifth Circuit noted in *United States v. Adair*, the "generic definition of robbery did not require a particular mens rea." 16 F.4th 469, 471 (5th Cir. 2021).  As such, the Fifth Circuit concluded that Texas robbery, even if committed with a reckless mens rea, qualifies as a § 4B1.2 crime of violence because it fits within the enumerated, generic offense of robbery. *Id.* Under that logic, even indulging the Defendant's argument about recklessness, Maryland robbery would still fit within the generic model of robbery and hence would still qualify as a crime of violence.

## IV. THE DEFENDANT'S ACTIONS OF POINTING A FIREARM AT A GROUP OF PEOPLE AND RAISING THE FIREARM TOWARDS THE PURSUING OFFICER WHILE FLEEING PRESENTED A SUBSTANTIAL THREAT TO PUBLIC SAFETY

The Defendant's Sentencing Memorandum attempts to downplay his conduct in the instant offense and his aggravating role in the police-involved shooting that transpired. First, the Defendant's Memo asserts that "Mr. Hillman was present [. . .], but was not involved" in the physical altercation that occurred at the 400 block of East Baltimore Street. ECF No. 48 at 2. However, officers on the scene observed the Defendant approach the group involved in the altercation and point a firearm in the direction of the group and one of the responding officers.

18

Second, the Defendant's Sentencing Memo claims that "Mr. Hillman did not fire or attempt to fire the gun he possessed at any time, even when he was in a situation where others, including the police, were shooting around him." What is missing from the Defendant's narrative is the fact that the pursuing police officer discharged his weapon in response to the Defendant turning around during flight and raising a firearm in the direction of the pursuing officer. This was all captured on a nearby CCTV camera posted across the street from the shooting. The CCTV video captures the last approximately 30 feet of the foot pursuit, where the Defendant can be seen running from a pursuing officer with a shiny object in his hand. The Defendant then abruptly stops, turns back around towards the officer, and raises his arm towards the officer. Fearing for his safety, the pursuing officer then discharged multiple rounds from his service weapon, disabling the Defendant.

## V.     A 70-MONTH SENTENCE IS APPROPRIATE UNDER 18 U.S.C. § 3553(A)

A total sentence of 70 months' imprisonment for the Defendant's Count One conviction is necessary to reflect the seriousness of the instant offense, the need to protect the public, the history and characteristics of the Defendant, and the need to avoid unwarranted sentencing disparities.

### A.     The History and Characteristics of the Defendant

A 70-month sentence accounts for the history and characteristics of the Defendant, promotes respect for the law, and serves the goal of protecting the public. The Defendant has one prior conviction for illegally possessing a firearm and ammunition, one prior conviction for disorderly conduct, two prior convictions for possession of a controlled dangerous substance, and one prior conviction for robbery. PSR ¶¶ 28, 29, 30, 31, 32. His prior robbery conviction, for which the Defendant was sentenced to a 42-month suspended sentence and 5 years of supervised probation, occurred in mid-2018 and involved the Defendant robbing a victim at gunpoint while

the victim sat in his car outside of a 7-11 convenience store. PSR ¶ 32. The Defendant was still on supervised probation for that prior robbery when he committed the instant offense. PSR ¶ 34.

Thus, the Defendant has continued to carry and brandish firearms despite being prohibited from doing so and even during periods of supervised probation. His criminal history and characteristics therefore reflect a pattern of illegally carrying and brandishing firearms and demonstrate that the Defendant has not complied with prior periods of supervision. Despite efforts to rehabilitate, punish, and deter him from illegal behavior, the Defendant has continued to engage in dangerous criminal conduct involving firearms.

**B.      The Seriousness of the Defendant's Offense**

The criminal conduct associated with the Defendant's instant offense is very serious, particularly when viewed in light of his prior robbery conviction, which also involved the Defendant pointing a gun at someone. As a whole, the Defendant has shown a propensity for carrying dangerous loaded firearms in public and a willingness to brandish them at people, including law enforcement. It was this type of dangerous conduct that culminated in a police-involved shooting in a heavily populated area of Baltimore that ultimately resulted in severe injuries to the Defendant. Accordingly, a sentence of 70 months is necessary to promote respect for the law and protect the public by sending the message that prohibited individuals who repeatedly carry firearms and choose to brandish them at people will be dealt with severely.

**C.      The Need to Avoid Unwarranted Sentencing Disparities and Promote Respect for the Law**

The Government respectfully submits that a total sentence of 70 months' incarceration is the appropriate sentence in this case and is consistent with sentences imposed for similarly-situated defendants. The proposed sentence is at the upper end of the applicable guidelines range of 57 to 71 months for the Defendant's Count One offense. Furthermore, a downward variance from the

applicable guidelines range is not warranted in this case and does not promote respect for the law given the Defendant's criminal history and the fact that he has twice brandished firearms in public, the latter incident resulting in a police-involved shooting in a densely populated area of the city.

## V.    CONCLUSION

The Defendant faces sentencing for possession of a firearm and ammunition by a prohibited person. For the foregoing reasons, and based on a balancing of the applicable factors set forth under 18 U.S.C. § 3553(a), including the seriousness of the offense, the need to protect the public, the history and characteristics of the Defendant, and the need to avoid unwarranted sentencing disparities and promote respect for the law, the Government respectfully requests that this Court sentence the Defendant to a total term of 70 months for his Count One conviction and violation of supervised release, followed by 3 years of supervised release.

Respectfully submitted,

Erek L. Barron
United States Attorney

By:    _____/s/_____
Jonathan S. Tsuei
Special Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 14, 2023, a copy of the foregoing Response was delivered via ECF to Assistant Federal Public Defender Laura Abelson, counsel for the Defendant.

By:      _____/s/_____
         Jonathan S. Tsuei
         Special Assistant United States Attorney